UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN HELMER,<br><br>              Plaintiff,<br><br>      v.<br><br>ELENA DOLETSKAYA,<br><br>              Defendant. | Civil Action 02-00460 (HHK) |

**MEMORANDUM OPINION**

Plaintiff, John Helmer ("Helmer"), brings this action for fraud and breach of contract against defendant, Elena Doletskaya ("Doletskaya"). Before this court is Doletskaya's motion to dismiss [#5]. Upon consideration of Doletskaya's motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted.

**I.  BACKGROUND INFORMATION**

Helmer is a citizen of the United States and owns a home in the District of Columbia (the "District"). Compl. ¶ 2. From 1990 to the present, however, he has worked as an independent business journalist in Moscow, Russia, where he lives. *Id.* ¶ 4. Doletskaya is a citizen of the Russian Federation. *Id.* ¶ 3

In 1993, Helmer and Doletskaya began a personal relationship and, in July of that year, Doletskaya visited Helmer in Washington, D.C. *Id.* ¶ 6. During this visit, Helmer asserts that he and Doletskaya entered into two contracts. First, they discussed the possibility of Helmer purchasing an apartment in Moscow, negotiations for which had already begun in Moscow. *Id.* ¶

1

7. Doletskaya allegedly represented that she would assist Helmer in the transaction because she was able to read and understand Russian while Helmer could not. *Id.* ¶ 8. Helmer alleges that Doletskaya represented that she would arrange for the apartment to be placed in his name upon his payment of the apartment's sale price. *Id.* ¶ 9. On November 19, 1993, Doletskaya assisted Helmer with the purchase of an apartment in Moscow, Russia. *Id.* ¶ 12. Helmer allegedly paid for the apartment, and the parties both moved into the apartment in January 1994. *Id.* ¶¶ 13-15. In 1996, Helmer and Doletskaya's "personal relationship" ended, but they continued to live in the apartment together. *Id.* ¶ 21. In 2000, Helmer learned that the Moscow apartment was titled in Doletskaya's name. *Id.* ¶ 33. Doletskaya has refused to transfer the apartment to Helmer. *Id.* ¶ 34.

    The second contract Helmer and Doletskaya allegedly entered into during Doletskaya's visit called for Helmer to support Doletskaya while she was attempting to establish her career. *Id.* ¶ 10. After her career was established, Doletskaya would repay Helmer. *Id.* ¶ 11. Helmer supported Doletskaya financially from 1993 to 2000 and allowed her to use his American Express and Mastercard credit cards. *Id.* ¶¶ 17-18. During this time, Doletskaya incurred over $57,000 in personal expenses on Helmer's American Express and Mastercard credit cards, *Id.* ¶ 20, and Helmer agreed to finance Doletskaya's move to a cottage outside of Moscow by loaning her over $11,000 to pay for the cottage and other expenses. *Id.* ¶ 22. In 1998, Doletskaya was appointed the editor-in-chief of "Vogue Russia," and allegedly became financially self-sufficient as of 2001. *Id.* ¶ 23. Contrary to her alleged promises, however, Doletskaya has refused to repay the $68,000 in personal expenses that Helmer allegedly provided her during their relationship. *Id.* ¶ 35.

Helmer further alleges that during the parties' personal relationship, Doletskaya concealed numerous aspects of her past, and that if Helmer had known of Doletskaya's personal history, he would not have entered into the two contracts. *Id.* ¶¶ 27-31, 37. Helmer learned of Doletskaya's personal history in 2000 after their relationship terminated, and after Doletskaya refused to transfer the apartment and repay the loans. *Id.* ¶ 36. This suit followed.

## II. ANALYSIS

### A. Standard for Motion to Dismiss

Doletskaya seeks a dismissal of this case on several grounds only one of which merit significant discussion. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Doletskaya moves to dismiss for lack of personal jurisdiction.[1]

---

[1] A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotation marks omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must "construe the complaint in the light most favorable to [the] plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").

Generally, in resolving motions to dismiss brought under Rule 12(b)(2), unlike motions brought pursuant to 12(b)(6), courts are free to consider relevant materials outside the pleadings. *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) ("When a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire by affidavits or otherwise, into the facts as they exist."), *overruled on other grounds by Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction."). Therefore, in considering Helmer's motion to dismiss on the basis of lack of personal jurisdiction, the court has considered the parties' submissions relevant to this issue.

3

In general, the jurisdictional reach of a federal court is coextensive with a state court of general jurisdiction in the state where the federal court is located. *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). To determine whether this court is able to exercise personal jurisdiction over a defendant, the court must engage in a two-part inquiry. First, the court must examine whether jurisdiction is permitted under the District of Columbia's long-arm statute. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Second, if the long arm statute provides a basis for exercising jurisdiction, the court must then determine whether exercising jurisdiction over the defendant would offend the Constitution's guarantee of due process. *Id.* Constitutional due process requirements are satisfied when a defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant has minimum contacts with a forum when it has "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal quotation marks and citations omitted); *United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 116, 129 (D.D.C. 2000).

The plaintiff bears the burden of proof of establishing personal jurisdiction. *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 104 (D.D.C. 2002); *Dooley v. United Techs. Corp.*, 786 F. Supp 65, 70 (D.D.C. 1992); *Lott v. Burning Tree Club, Inc.*, 516 F. Supp 913, 918 (D.D.C. 1980). The plaintiff must make a prima facie showing of personal jurisdiction by alleging specific facts that

4

demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988); *Jacobsen*, 201 F. Supp. 2d at 104; *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). When personal jurisdiction is challenged, the plaintiff "cannot rest on bare allegations or conclusory statements and must allege specific facts connecting each defendant with the forum." *GTE New Media Servs., Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 36 (D.D.C. 1998).

> The District of Columbia's long-arm statute provides, in pertinent part:
>
> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
> (1) transacting any business in the District of Columbia;
> . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. Code § 13-423 (2001). When jurisdiction over a person is based solely on § 13-423, "only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code § 13-423(b). Thus, each claim must be based specifically on acts set forth in § 13-423(a).

    **1.**    **Breach of Contract**

Helmer does not specifically indicate which provision of the long-arm statute he relies upon to establish personal jurisdiction as to his breach of contract claim. The only provision that could potentially apply, however, is § 13-423(a)(1).

To establish jurisdiction under the "transacting business" provision of the long-arm statute, Helmer must satisfy a four-part test by establishing that:

> (i) the Doletskaya transacted business in the District;
> (ii) the claim arose from the business in the District;
> (iii) the Doletskaya had minimum contacts with the jurisdiction; and
> (iv) the [c]ourt's exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

*Jacobsen*, 201 F. Supp. 2d at 104 (internal quotation marks and citation omitted). It is clearly established that the "transacting business" provision of the District of Columbia long-arm statute authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (stating that "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry here"); *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996).

The "transacting any business" provision of the District of Columbia long-arm statute permits the exercise of personal jurisdiction when a non-resident defendant's contractual activities cause repercussions in the District. *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 5 (D.D.C. 1996). It is sufficient if a suit is based on a contract that has a "substantial connection" with the District. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957); *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981). Under certain circumstances, a single act may be adequate to bring a defendant within the reach of the statute. *Reiman v. First Union Real Estate Equity & Mortgage Invs.*, 614 F. Supp. 255, 257 (D.D.C. 1985); *see Bueno v. La Compania Peruana di Radiodifusion, S.A.*, 375 A.2d 6, 9 (D.C. 1977). The court must look at the "quality and nature of contacts, and these contacts must illustrate a deliberate and voluntary association with the forum on the part of the defendant." *Schwartz*, 938 F. Supp. at 5.

The District of Columbia Court of Appeals has liberally interpreted the phrase "arising from" in § 13-423 to "require only a showing of a 'discernible relationship' between the particular claim and the business transacted . . . ." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 336 (D.C. 2000) (quoting *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991)).  Despite this liberal standard, personal jurisdiction remains "limited to claims arising from the particular transaction of business" by the defendant in the District.  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002) (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)); *see Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158 (D.C. 1978).

Assuming as true Helmer's allegations that the two contracts at issue were made while Doletskaya was in the District of Columbia, this fact, standing alone, does not necessarily establish a "substantial connection" between the contract and the forum.[2]  The court must look to the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant "purposely established minimum contacts" with the forum.  *Burger King*, 471 U.S. at 479; *see Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999).  This court has held that a nonresident defendant's single meeting in the District did not give rise to personal jurisdiction

---

[2] The court notes that Helmer's testimony in the record is not clear as to when the agreement for Doletskaya to purchase the apartment was made.  Helmer testified that the agreement was discussed while the parties were in the District in 1993, and alleges that Doletskaya made false representations while in the District. Ex. A to Pl.'s Opp'n to Mot. to Dismiss (Second Helmer Decl. ¶ 7); Ex. A to Pl.'s Reply to Mot. for Default J. (Fourth Helmer Decl. ¶¶ 3-4).  In his declaration of May 6, 2002, however, Helmer testified that the contract in which Doletskaya agreed to help purchase the Moscow apartment was entered into on November 19, 1993.  Ex. E to Pl.'s Opp'n to Mot. to Dismiss (Helmer Aff. ¶ 3).

when the contracts were executed and performed outside the District, and all parties worked and resided outside the District. *Freiman*, 925 F. Supp. at 24-25.

The court concludes that even if the agreement to purchase the apartment were made in the District, no "substantial connection" exists between this contract and the District of Columbia. *McGee*, 355 U.S. at 222. Helmer admits that contract negotiations for the apartment purchase began while the parties were in Russia. Compl. ¶ 7. Moreover, the contemplated future consequences of the contract to purchase the apartment did not affect the District because the contract would be performed in Russia while both parties were living there, and the breach of contract occurred in Russia. As a result, the court lacks personal jurisdiction over Doletskaya as to Helmer's breach of contract claim.

The court now turns to the alleged contract to repay Helmer for Doletskaya's personal expenses. The sole connection between the contract to repay Helmer and the District is that the bills for at least two of Helmer's credit cards were mailed to Helmer's address in the District. *See* Exs. 4-5 to Pl.'s Opp'n to Mot. for Default J.; Ex. E to Pl.'s Opp'n (Second Helmer Decl. ¶ 9). Helmer paid the credit card bills from a United States bank account, but the record does not reflect that this bank account was located in the District. Ex. A to Pl.'s Reply to Mot. for Default J. (Fourth Helmer Decl. ¶ 22). Helmer does not allege that Doletskaya incurred any personal expenses in the District; rather, the record indicates that the majority–if not all–of the purchases occurred outside of the United States. Pl.'s Exs. in Supp. of Opp'n to Mot. to Dismiss. The court concludes that the fact that credit card bills were sent to Helmer's address in the District is insufficient to establish the requisite "substantial connection" with the forum. *McGee*, 355 U.S. at 222.

8

Accordingly, Helmer's breach of contract claim must be dismissed because the court lacks personal jurisdiction over Doletskaya as to this claim.

### 2. Fraud

Helmer does not specify which provision of the long-arm statute he relies upon to establish personal jurisdiction as to his fraud claim. The only provisions that could potentially apply, however, are § 13-423(a)(3) and § 13-423(a)(4), which deal with tortious activity.

#### a. Tortious Activity Occurring in the District of Columbia

In order for § 13-423(a)(3) to apply, both the tortious injury and the act causing the injury must occur in the District of Columbia. *Margoles v. Johns*, 333 F. Supp. 942, 944 (D.D.C. 1997), *aff'd* 483 F.2d 1212 (D.C. Cir. 1973); *accord McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996). "The District's long-arm statute . . . distinguishes sharply between the act or omission which causes the injury and the injury itself." *Reese v. Geneva Enters.*, 1997 WL 214864, at *5 (D.D.C. Apr. 18, 1997) (finding no showing of injury in the District when all effects of acts giving rise to the claim occurred outside the District); *see also Freiman*, 925 F. Supp. at 22 (holding that § 13-423(a)(3) requires that the act and injury be established independently).

Assuming as true Helmer's allegations, Doletskaya committed fraud in the District because her misrepresentations concerning the apartment occurred while she was in the District in 1993. Because Helmer alleges that the fraudulent concealment took place during the period of the parties' personal relationship from 1993 to 1996, Doletskaya would have also fraudulently concealed her personal history while she was in the District.

Even if Doletskaya committed a tortious act in the District, however, Helmer has not shown that he suffered injury in the District. Although Helmer claims to be a "resident" of the District of Columbia because he owns a "home" in the District, Helmer also acknowledges that he has "maintained a residence and an office" in Russia from 1990 to the present. Compl. ¶¶ 2, 4. Helmer does not allege that he was physically present in the District other than in July 1993. Helmer claims that Doletskaya's fraud caused him financial injury because if he had known of the fraud, he would not have been deprived of the Moscow apartment and would not have funded Doletskaya's personal expenses. The court must "distinguish between the injury suffered and any pecuniary losses, which are merely one measure of such an injury." *Aiken v. Lustine Chevrolet, Inc.*, 392 F. Supp. 883, 886 (D.D.C. 1975). Any financial injury Helmer may have sustained because of Doletskaya's misrepresentations regarding the apartment purchase did not occur in the District because the agreement to purchase the apartment was made in Russia, and the deprivation of property occurred in Russia while both parties were living there. Likewise, any financial injury Helmer may have sustained because of Doletskaya's fraud regarding the repayment for personal expenses did not occur in the District. Helmer was given the opportunity to conduct jurisdictional discovery and submitted credit card receipts for expenses Doletskaya incurred from May 1994 to April 2000. Pl.'s Exs. in Supp. of Opp'n to Mot. to Dismiss. These credit card receipts, however, do not show that any expenses were incurred in the District. Helmer was not physically present in the District when Doletskaya incurred the personal expenses or when Helmer made payments from his U.S. bank account. Helmer's payment of the credit card bills that were mailed to the District is merely a measure of the amount of his pecuniary loss. Therefore, the court concludes that § 13-423(a)(3) does not provide a basis for

10

the exercise of personal jurisdiction because Helmer's injury from the alleged fraud did not occur in the District.[3,4]

### b. Tortious Activity Outside the District of Columbia

Helmer has not alleged any facts that would support the applicability of § 13-423(a)(4). The record does not show that Doletskaya regularly "does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4). Doletskaya merely vacationed in the District of Columbia in 1993. Even if Doletskaya "travels to the United States

---

[3] Helmer does not expressly allege emotional losses as a result of Doletskaya's fraud. The court notes that because Helmer was not actually living in the District in 2000 when he discovered Doletskaya's alleged fraud, he could not have sustained any emotional damages at his home in the District. "In distinguishing between the act or omission which produces the injury and the injury itself . . . the locus of injury for an individual suffering peculiarly at home [is] her home." *Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F. Supp. 810, 813 (D.D.C. 1989); *Aiken*, 392 F. Supp. at 886 (stating that the plaintiff's injury to her credit rating and to her mental and emotional well-being as a result of fraud can only be sustained at her home). The *Masterson-Cook* court identified a person's "home" in the context of loss of consortium as a person's "marital domicile." 722 F. Supp. at 813. "Domicile" requires both physical presence and intent to remain for an indefinite period of time. *Shafer v. Children's Hosp. Soc'y*, 265 F.2d 107, 120-21 (D.C. Cir. 1957); *Dist. of Columbia v. Woods*, 465 A.2d 385, 387 (D.C. 1983). Although Helmer owns real property in the District, he was not physically present in the District other than in July 1993. Moreover, Helmer has not shown an intent to remain in the District; rather the fact that he has lived and worked in Russia for approximately twelve years prior to filing this action suggests as an intent to remain in Russia. Helmer does not fall into any category of persons who receive special treatment for purposes of determining domicile, such as governmental or organization officials who "often have protracted stays away from their place of domicile," 13B Wright, Miller, & Cooper, Federal Practice and Procedure § 3612 (2d ed. 1984), because as an "independent business journalist," Compl. ¶ 4, Helmer apparently has no governmental or organizational ties.

[4] Because the court concludes that it lacks personal jurisdiction under § 13-423(a)(3) as to Helmer's fraud claim, it need not proceed to the due process stage of the jurisdictional inquiry. *See Moncrief v. Lexington Herald-Leader Co.*, 807 F. 2d 217, 221 (D.C. Cir. 1986) (stating that § 13-423(a)(3) is "a precise and intentionally restricted tort section which stops short of the outer limits of due process") (internal quotation marks and citations omitted).

several times a year on business related trips," there is no indication that Doletskaya regularly travels to *the District*.  Ex. A to Pl.'s Opp'n (Second Helmer Decl. ¶ 11); Attach. to Def.'s Reply (Doletskaya Decl. ¶ 3).  Therefore, the court concludes that § 13-423(a)(4) of the District of Columbia long-arm statute does not provide a basis for the exercise of personal jurisdiction.[5]

Accordingly, Helmer's fraud claim must be dismissed because the court lacks personal jurisdiction over Doletskaya as to the fraud claim.

Because the court finds that it lacks personal jurisdiction over Doletskaya, the court need not consider Doletskaya's other grounds for dismissal, including improper venue or *forum non conveniens*, improper service of process, failure to state a claim, and failure to plead fraud with specificity.

### III. CONCLUSION

For the forgoing reasons,  the court concludes that Doletskaya's motion to dismiss [#5] must be GRANTED.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

---

[5] Because the court concludes that it lacks personal jurisdiction under § 13-423(a)(4) as to Helmer's fraud claim, it need not proceed to the due process stage of the jurisdictional inquiry. *See Moncrief*, 807 F. 2d 217, 221 (D.C. Cir. 1986) (stating that § 13-423(a)(4) has a reach similar to that of § 13-423(a)(3), which "stops short of the outer limits of due process") (internal quotation marks and citation omitted); *Crane*, 814 F.2d at 762 ("This court has explicitly noted, moreover, that (a)(4) of the D.C. long-arm statute may indeed stop short of the outer limit of the constitutional space.").